CILENTI & COOPER, PLLC

ATTORNEYS AT LAW

200 Park Avenue – 17ᵗʰ Floor
New York, New York 10166

Telephone (212) 209-3933
Facsimile (212) 209-7102

May 5, 2022

**BY ECF**

Hon. Katherine P. Failla, U.S.D.J
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007



**MEMO ENDORSED**

> **Re:    *Gonzalez, et al. v. Ninth Ave. Kitchen Corp., et al.*
>    *Case No. 21-CV-1158 (KPF) (OTW)*

Dear Judge Failla,

We are counsel to the plaintiffs in the above-referenced matter, and jointly submit this letter together with defense counsel for the Court's assessment and approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this dispute, which was negotiated at arm's length between experienced counsel.

> **I.    *The Need for the Court's Approval of the Agreement***

As plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA]"). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11ᵗʰ Cir. 1982); *Sampaio v. Boulder Rock Creek Developers, Inc.*, No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

Hon. Katherine P. Failla, U.S.D.J.
May 5, 2022
Page 2

## II.    *Plaintiffs' Claims for Unpaid Wages*

### a)  The Defendants

Defendants own and operate a Thai restaurant doing business Yum Yum Too, located at 662 Ninth Avenue, New York, New York 10036 (the "Restaurant"). The individual Defendants are all shareholders of the corporate defendants and owners of the Restaurant.

### b)  The Plaintiffs

Plaintiffs consist of three (3) former employees hired to work for the defendants' Restaurant as dishwashers and food preparers/cooks. The following is a brief synopsis as to each plaintiff's claim:

- Quirino ("Jose") Ortega Gonzalez

Mr. Gonzalez alleges working for the defendants from in or about July 2017 until on or about January 31, 2021. Prior to the onset of the COVID-19 pandemic, Mr. Gonzalez alleges that, although his work shift fluctuated slightly each week, he worked five (5) or six (6) days per week and approximately fifty-one (51) hours per week. After the restaurant re-opened in or about July 2020, Mr. Gonzalez alleges working approximately twenty-four (24) to thirty-two (32) hours per week.

With respect to his pay, Mr. Gonzalez alleges being paid on a daily rate basis straight time for all hours worked. He alleges being paid as follows:

- ➢ July 2017 – August 2017: $80/day
- ➢ September 2017 – December 2017: $90/day
- ➢ January 2018 – November 2019: $96/day
- ➢ December 2019 – January 31, 2021: $100/day

- Antonio Ortega Gonzalez

Mr. Gonzalez alleges working for the defendants from in or about June 2019 until in or about March 2020. Mr. Gonzalez alleges that, although his work shift fluctuated slightly each week, he typically worked six (6) days per week and approximately forty-six (46) hours per week, and was paid at the rate of $96 per day straight time for all hours worked.

- Cruz Mejia

Mr. Mejia alleges working for the defendants from in or about June 2016 until in or about March 2020. Mr. Mejia alleges that, although his work shift fluctuated slightly

Hon. Katherine P. Failla, U.S.D.J.
May 5, 2022
Page 3

each week, he typically worked five (5) or six (6) days per week and approximately fifty-one (51) to sixty (60) hours per week.

> June 2016 – July 2016: $85/day
> August 2016 – October 2017: $90/day
> November 2017 – April 2018: $130/day[1]
> May 2018 – March 2020: $102/day[2]

A dispute exists as to whether the defendants provided plaintiffs with wage notices at the time of hire or anytime thereafter. More specifically, Mr. Mejia alleges that he was not provided with a wage notice until the end of 2018 – more than two (2) years after he commenced employment. Similarly, plaintiff Quirino Ortega Gonzalez alleges he did not receive a wage notice until the end of 2018, approximately one and one-half (1½) years after he commenced employment. Moreover, each of the plaintiffs allege that they did not receive a wage notice in their primary language of Spanish as required by the labor law Regulations.

It is plaintiffs' contention that the defendants' failure to provide them with appropriate wage notices and weekly wage statements amount to a total of $10,000 in statutory damages for each plaintiff ($30,000 in total damages) ($50 per day until the violation is cured for lack of a wage notice up to a maximum of $5,000; $250 per day until the violation is cured for lack of a statement up to a maximum of $5,000). *See* N.Y. Lab. Law §§ 195(1)(a), (3); 198(1-c), (1-d).

Defendants dispute plaintiffs' allegations, including their purported dates of employment, hours worked, and amounts paid and contend that plaintiffs were all provided appropriate wages statements and notices under the NYLL.

Another critical factual dispute in this matter is whether plaintiffs were actually paid on an hourly basis (as contended by the defendants) or on a daily basis (as alleged by plaintiffs), and when the defendants changed their pay practices, if at all. According to the defendants, they corrected their pay after they were sued previously for alleged wage and hour violations in *Xu v. Little Siam Corp.*, No. 17 Civ. 7342 (S.D.N.Y. 2017). According to the plaintiffs, the defendants never changed their pay practices and continued to pay them on a daily basis throughout the entirety of their employment.

Defendants produced time and pay records for purposes of mediation. Plaintiffs believe the documents shown that they were being paid on a daily rate basis at least in 2016 and 2017. Records for 2019 do appear to show that the defendants began playing plaintiffs on an hourly basis at the rate of $13.50 per hour (and $15 per hour in 2020). Plaintiffs, however, dispute the accuracy of the records.

---

[1] Mr. Mejia was promoted to the position of cook during this period.
[2] Mr. Mejia returned to the position of dishwasher during this period.

Hon. Katherine P. Failla, U.S.D.J.
May 5, 2022
Page 4

Defendants dispute plaintiffs' allegations and maintain that at all relevant times, plaintiffs were paid at an appropriate hourly rate, inclusive of overtime when applicable.

The other factual dispute centers around the fact that the defendants deducted one-hour per day (and sometimes more) for alleged break time. Defendants contend that the restaurant was closed to the public between lunch and dinner. While that may be accurate, plaintiffs maintain that they were not afforded a break during that period but were required to work cleaning up after the lunch shift and preparing food in advance of the dinner shift.

Defendants maintain that the restaurant was closed during this period and no Plaintiff performed any work while on break.

Based on the allegations in the complaint, plaintiffs initially calculated that had they prevailed at trial on *all* of their claims, they could have recovered slightly more than $63,000, with an equal amount in liquidated damages. Together with the statutory damages for the defendants' failure to provide wage notices and statements, the total value of plaintiffs' claims amount to slightly more than $156,000, exclusive of attorneys' fees and interest.

However, because the prior corporate defendant – Ninth Avenue Kitchen Corp., is no longer active, and its shareholder – Peter Kwanchaipruck, is residing outside the United States with no collectible assets in the country, plaintiffs' claims are likely to be limited solely to 2019 (and early 2020) when the current owner took over operational control over the business.[3] If that were indeed the case, plaintiffs' estimated damages for that limited period amounts to approximately $17,000 with an equal amount in liquidated damages.

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $22,000 to resolve all of plaintiffs' wage and hour claims against the defendants, which is to be paid in full within fourteen (14) days of the Court approving the terms of the Agreement. Based on length of employment, hours worked, and rates paid, each of the plaintiffs will receive a *pro rata* share of the settlement. The parties believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiffs' claims.

### III.    The Agreement is Fair and Reasonable

The parties represent to the Court that the settlement between the parties is a fair and reasonable resolution of a *bona fide* dispute reached as a result of extensive negotiations. In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008

---

[3] Upon due consideration and research, plaintiffs determined that they had a limited chance of successfully demonstrating the current owners' successor liability for the prior owner's alleged unlawful practices.

U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores, supra*, 679 F. 2d at 1354)).

Here, this settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

By settling now, plaintiffs receive virtually all of their calculated unpaid wages for the only period likely to be recoverable (2019-2020) even after attorneys' fees are accounted for, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiffs, they made the decision to accept the defendants' offer.

## IV.    Application for Attorneys' Fees

Pursuant to plaintiffs' retainer agreement, counsel will retain 33.33% of the net proceeds of the settlement after out-of-pocket expenses ($606) are deducted. As such, plaintiffs' counsel seeks a total of $7,130.62 in fees, plus an additional $606 in costs for a total of $7,736.62, which is slightly less than the firm's lodestar.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id.* at 206. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where, as here, the proposed fee amount is exactly one-third of the net settlement amount. *See Caceres v. Brentwood Farmers Market*, No. 20 Civ. 3476, 2021 U.S. Dist. LEXIS 147063, at *4-6 (E.D.N.Y. May 4, 2021); *Garcia v. Cloister Apt. Corp.*, 16 Civ. 5542, 2019 U.S. Dist. LEXIS 51887, at *9-10 (S.D.N.Y. Mar. 27, 2019). Here, plaintiffs agreed to a one-third contingency retainer agreement with counsel in connection with their wage-and-hour claims.

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is more than the fees requested herein. Attached hereto is a copy of Cilenti & Cooper, PLLC's billing record for work performed on this matter. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegals) have previously been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016).

Hon. Katherine P. Failla, U.S.D.J.
May 5, 2022
Page 6

        For all of the reasons set forth above, the parties request that the Court approve the
Agreement and enter the proposed Stipulation and Order of Dismissal that is being submitted
simultaneously herewith, which expressly provides that the Court will retain jurisdiction over
this matter solely for purposes of enforcing the Agreement.

        We thank the Court for its continued attention to this matter.

                                Respectfully submitted,


                                Justin Cilenti

Enclosures

cc: Brett Gallaway, Esq. (by ECF)



The Court has reviewed the settlement documents for fairness
in accordance with the FLSA and Second Circuit law, see,
e.g., Cheeks v. Freeport Pancake House, 796 F. 3d 199 (2d
Cir. 2015), and has concluded that the terms are fair and
reasonable. It should be noted, however, that the Court is
not in this endorsement opining specifically on the
reasonableness of the rates charged by the attorneys and
paralegals representing Plaintiff.

Accordingly, the settlement is approved, and the Clerk of
Court is directed to terminate all pending motions, adjourn
all remaining dates, and close this case. The Court will
also so-order separately the stipulation of dismissal
submitted by the parties.

Dated:    May 17, 2022            SO ORDERED.
          New York, New York


                                  Katherine Polk Failla

                                  HON. KATHERINE POLK FAILLA
                                  UNITED STATES DISTRICT JUDGE